# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
# Florence Division

Tyler Mazyck,
Plaintiff,
v. Civil Action No. 2:25-cv-12530-DCN-MGB
**Palmetto Goodwill Industries,**
Defendant.

SEP 12 '25 AM 10:21
RCV'D - USDC FLO SC

## COMPLAINT AND JURY DEMAND

## I. INTRODUCTION

This is a civil action for harassment, discrimination, retaliation, interference with protected leave, and wrongful denial of benefits arising from Plaintiff's employment with Defendant, Palmetto Goodwill Industries ("Defendant").

Plaintiff endured a hostile work environment, repeated retaliation after protected complaints, and unlawful denial of disability benefits and accommodations, culminating in his constructive and/or actual termination.

Defendant's conduct violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Employee Retirement Income Security Act (ERISA), the South Carolina Human Affairs Law, and South Carolina tort law.

## II. JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff brings claims under federal statutes, including Title VII, the ADA, and ERISA.

Supplemental jurisdiction is proper under 28 U.S.C. § 1367 for related South Carolina tort claims.

Venue is proper in this Court under 28 U.S.C. § 1391 because the acts and omissions giving rise to this case occurred at Defendant's Georgetown, South Carolina location, which lies within the Florence Division of this Court. In the alternative, if this Court determines venue is more appropriate in the Charleston Division, Plaintiff does not object.

## III. PARTIES

- **Plaintiff**, Tyler Mazyck, is a resident of Georgetown County, South Carolina.
- Plaintiff was employed by Defendant at its Georgetown, SC retail location from March 7, 2025 through approximately August–September 2025.

- **Defendant**, Palmetto Goodwill Industries, is a nonprofit corporation headquartered in Charleston, SC, and operates retail stores and donation centers throughout South Carolina.

## IV. STATEMENT OF FACTS

*(Condensed; Plaintiff reserves the right to attach exhibits.)*

### Early Employment

- Plaintiff began working for Defendant on March 7, 2025. He performed well, was trained by Pamela Simmons, and received positive early recognition, including issuance of a name badge within two months. (see **Exhibit A-2**).

### April 22, 2025 – Verbal Abuse by Manager

- On April 22, 2025, Manager Teresa Pringle confronted Plaintiff about cell phone use in a hostile manner, stating she did not "want to have to fire [him] for a phone" and telling him to "stop acting like [he] don't give a f***."
(see **Exhibit B-1**)
- Such language and threats created an intimidating and hostile work environment.

### Defendant's Own Harassment Policy

- Defendant publishes a Harassment and Abuse-Free Workplace policy in its employee handbook, which expressly prohibits harassment, bullying, and "cyberbullying," defined as including "pretending to be someone else to make that person look bad." The policy further promises that all complaints will receive a "prompt, thorough, and equitable investigation," and that no retaliation will be tolerated against employees who raise concerns. Plaintiff reasonably relied on these written assurances. However, when Plaintiff reported harassment and cyber impersonation, Defendant failed to follow its own policy, failed to investigate properly, and allowed retaliation and reputational harm to occur. (see Exhibit K-1 through K-4).

### May 9–10, 2025 – Cyber Impersonation Incident

- On May 9, 2025, Manager Sydney Livingston received text messages from a number impersonating Plaintiff, including a sexually explicit image. Plaintiff was called into a meeting on May 10 and shown the message. While management later stated Plaintiff was not under investigation and "we know it wasn't you," Defendant failed to treat Plaintiff as the victim of cyber harassment.
- Defendant's own Harassment and Abuse-Free Workplace policy expressly prohibits "cyberbullying," defined as *"the intentional and overt act of aggression toward another person by way of any technological tool, such as email, instant messages, text messages, digital pictures or images, or website postings... Cyberbullying can include but is not limited to... pretending to be someone else to make that person look bad."*
- Despite this policy, Defendant did not initiate a proper investigation, did not attempt to identify the perpetrator, and allowed gossip and suspicion to persist among coworkers. Defendant's failure to enforce its own written protections caused Plaintiff reputational harm, aggravated a hostile work environment, and left Plaintiff without the protection Goodwill promises to all employees. *(see Exhibit K-2, K-3)*

## May 12–16, 2025 – Obstruction and Retaliation
- When Plaintiff requested HR contact information, Manager Livingston told him, "You don't need that, you're good," obstructing his right to complain.
- On May 13, Plaintiff submitted an HR complaint (see **Exhibit B-3**; on May 14, HR declared the matter "closed" without proper investigation.
- Immediately after, Plaintiff's hours were reduced, and he was pressured to sign paperwork reducing his schedule.(see **Exhibit C-1, C-2**).

## Ongoing Harassment and Retaliation (May–June 2025)
- Plaintiff was subjected to gossip, micromanagement, selective enforcement of rules, heavier physical assignments, being sent home under vague pretenses, and unwanted physical contact by managers and coworkers.
  (see **Exhibit C-3, C-5**)
- Plaintiff submitted further HR complaints, including a June 10, 2025 complaint alleging race and gender discrimination (see **Exhibit B-3**). HR gave only generic acknowledgments and no investigation.

## Mental Health Leave (July 2025)
- On July 7, 2025, Plaintiff received a Right-to-Sue letter from the EEOC.(see **Exhibit H-1**).
- That same week, Plaintiff requested ADA leave due to work-related stress, supported by his therapist's documentation (see **Exhibit D-1, D-2**).
- Defendant failed to engage in the interactive process or accommodate Plaintiff's medical needs.

## Benefit Denials and Constructive Termination (August 2025)
- Sun Life, Defendant's benefits administrator, denied Plaintiff's Short-Term Disability claim on August 27, 2025, citing a "work-related" exclusion, while Defendant failed to provide workers' compensation coverage or inform Plaintiff of any such process. (see **Exhibit E-1**).
- Defendant, as the Plan Administrator, is responsible for ensuring Plaintiff's access to benefits. By allowing its claims administrator to deny STD benefits under a "work-related" exclusion while simultaneously failing to provide workers' compensation coverage, Defendant effectively deprived Plaintiff of any form of wage replacement protection, constituting interference and retaliation in violation of ERISA. (see **Exhibit E-2, E-4**).
- On August 30, 2025, Plaintiff received notice that his group life insurance coverage would end on August 31, 2025, but Defendant never sent formal termination notice. Plaintiff has repeatedly requested confirmation of his employment status and received no response. (see **Exhibit E-3**).
- Further, Plaintiff has obtained a copy of his ADP payroll profile, which reflects his employment status as "Terminated" at the Georgetown retail location. (see Exhibit F-5). Defendant never provided Plaintiff formal written notice of termination, despite internally processing his separation.

## Failure to Engage in the Interactive Process / Termination During Ongoing Leave Requests
- Plaintiff's leave of absence was initially approved for July 10–31, 2025.
- Before that leave expired, Sun Life and Defendant requested updated medical

- documentation. Plaintiff's provider, Dr. Jessica Greene, faxed and emailed updated records on August 19 and August 22, 2025.
- On August 25 and August 26, 2025, both Plaintiff and Dr. Greene confirmed with Sun Life that the updated records had been submitted and were under review. Plaintiff also advised Sun Life and Defendant that he was awaiting a decision regarding extension of leave.
- Despite receiving this information, Defendant never engaged in the required ADA "interactive process" with Plaintiff, never discussed possible accommodations (including additional medical leave), and never responded to Plaintiff's multiple emails requesting confirmation of his employment status.
- On or about September 8, 2025, Plaintiff discovered via ADP's employee portal that Defendant had internally processed his status as "Terminated." Defendant never provided Plaintiff with formal written notice of termination, and instead allowed his benefits to lapse while ignoring his pending ADA accommodation requests.
- Defendant's conduct deprived Plaintiff of both income protection and the opportunity for reasonable accommodation, and directly violated the ADA's requirements.

**Settlement Demand and Denial**

- On August 23, 2025, Plaintiff submitted a $600,000 confidential settlement demand (see **Exhibit G-1**).
- Defendant's counsel, Ogletree Deakins, responded on September 3, 2025, categorically denying all allegations and rejecting settlement (see **Exhibit G-3**).
- Defendant has refused to provide written confirmation of Plaintiff's employment status despite repeated requests (see **Exhibit F-1, F-4**).

## V. CAUSES OF ACTION
### COUNT I – Discrimination Based on Race and Sex (Title VII)
Defendant treated Plaintiff less favorably than similarly situated employees outside his protected classes by enforcing rules selectively, tolerating misconduct by others, and assigning heavier tasks to Plaintiff.
*(See Exhibits C-3; J-1).*
**Remedies Sought:** Declaratory relief; back pay; compensatory damages for lost income and humiliation; punitive damages; injunctive relief requiring anti-discrimination policy compliance.

### COUNT II – Hostile Work Environment (Title VII)
Plaintiff was subjected to severe and pervasive harassment, including verbal abuse, unwanted physical contact, and cyber impersonation, tolerated and perpetuated by management. The hostile environment was aggravated when Defendant failed to apply its own Harassment and Abuse-Free Workplace policy, which expressly prohibits "cyberbullying," including "pretending to be someone else to make that person look bad," and requires a "prompt, thorough, and equitable investigation" of harassment complaints. Instead of enforcing its policy, Defendant allowed gossip and suspicion to persist unchecked after the impersonation incident, causing

reputational harm and undermining Plaintiff's ability to work effectively.
(See Exhibits B-1, B-2, B-4; K-1 through K-3; J-1).
**Remedies Sought:** Declaratory relief; compensatory damages for emotional distress and reputational harm; punitive damages; injunctive relief requiring training and enforcement of anti-harassment policy.

## COUNT III – Retaliation (Title VII)

Defendant retaliated against Plaintiff for engaging in protected activity (HR complaints, EEOC charge) by reducing hours, issuing write-ups, obstructing leave, and constructively or actually terminating employment.
(See Exhibits C-1, C-2, F-1, J-1, J-2).
**Remedies Sought:** Back pay; front pay (or reinstatement); compensatory damages; punitive damages; injunctive relief requiring anti-retaliation compliance.

## COUNT IV – Disability Discrimination and Failure to Accommodate (ADA)

Defendant failed to engage in the interactive process or accommodate Plaintiff's disability despite documentation and requests.
(See Exhibits D-1, D-2, D-3).
Defendant failed to engage in the interactive process required by the ADA. Despite receiving updated medical documentation from Plaintiff's provider in August 2025, Defendant did not communicate with Plaintiff about possible accommodations or extended leave.
Defendant prematurely terminated Plaintiff's employment on or about September 8, 2025, while updated medical certification was still pending review. This constituted both a failure to accommodate and unlawful disability discrimination.
Terminating an employee during the pendency of an accommodation request, without exploring alternatives or providing notice, is a per se violation of the ADA's reasonable accommodation requirements.
**Remedies Sought:** Declaratory relief; back pay; compensatory damages (emotional distress); punitive damages; injunctive relief requiring ADA accommodation compliance.

## COUNT V – Retaliation (ADA)

Defendant retaliated against Plaintiff for requesting ADA accommodations by denying protections and terminating benefits.
(See Exhibits D-1 through D-3; E-1, E-3; J-2).
Plaintiff's termination was carried out after Plaintiff engaged in protected activity, including requesting extended leave as an accommodation for his disability and filing internal and external complaints of discrimination.
The timing of Plaintiff's termination — immediately after his accommodation requests and while

documentation was pending — demonstrates retaliatory motive.
**Remedies Sought:** Back pay; front pay; compensatory damages; punitive damages; injunctive relief prohibiting retaliation.

## COUNT VI – Interference and Retaliation (ERISA)
Defendant denied STD benefits citing a "work-related" exclusion, failed to provide workers' compensation, and terminated life insurance without notice. Defendant's actions interfered with Plaintiff's rights under ERISA and retaliated against Plaintiff for seeking plan benefits.
*(See Exhibits E-1 through E-4; J-2).*
**Remedies Sought:** Declaratory relief; back pay (denied STD benefits); reinstatement of benefits; equitable relief requiring plan compliance; attorneys' fees.

## COUNT VII – Wrongful Termination in Violation of Public Policy (South Carolina Law)
Plaintiff was discharged in retaliation for protected complaints, violating South Carolina public policy.
*(See Exhibits F-1 through F-5; J-2, J-3).*
**Remedies Sought:** Back pay; front pay; compensatory damages; punitive damages.

## COUNT VIII – Negligent Supervision and Retention (South Carolina Law)
Defendant failed to act despite knowledge of misconduct, causing foreseeable harm to Plaintiff.
*(See Exhibits B-2, C-3, J-1).*
**Remedies Sought:** Compensatory damages (emotional distress, reputational harm); punitive damages.

## COUNT IX – Invasion of Privacy / Defamation (South Carolina Law)
Plaintiff was harmed by false and obscene messages sent to his manager by an impersonator pretending to be Plaintiff. Even though management acknowledged Plaintiff was not the sender, Defendant failed to take adequate steps to protect Plaintiff's reputation or stop the spread of false impressions among coworkers. Defendant's inaction allowed others to believe Plaintiff engaged in obscene conduct, placing him in a false light and damaging his reputation. Such conduct constitutes defamation and invasion of privacy under South Carolina law.
*(See Exhibits B-2, B-4; J-1, J-2).*
**Remedies Sought:** Compensatory damages (reputational harm, humiliation); punitive damages.

## COUNT X – Intentional Infliction of Emotional Distress (South Carolina Law)
Defendant's extreme and outrageous conduct caused Plaintiff severe distress requiring therapy.
*(See Exhibits D-2, I-3; J-1 through J-3).*
**Remedies Sought:** Compensatory damages (distress, therapy costs); punitive damages.

**COUNT XI – Cyber Harassment and Digital Impersonation (South Carolina Law)**
Defendant's own Harassment and Abuse-Free Workplace policy expressly defines "cyberbullying" to include "pretending to be someone else to make that person look bad," and guarantees a "prompt, thorough, and equitable investigation" of all harassment complaints, with protection against retaliation. Plaintiff was the direct target of such cyber impersonation through obscene text messages sent to management. Despite acknowledging Plaintiff was not the sender, Defendant failed to enforce its policy, failed to investigate properly, and allowed workplace gossip and reputational harm to persist. Defendant's refusal to follow its own standards aggravated the hostile work environment and violated its duty to protect employees from harassment.
(See *Exhibits K-1 through K-3; B-2; J-1, J-2*).
**Remedies Sought:** Declaratory relief; compensatory damages (reputational harm, emotional distress); punitive damages; injunctive relief requiring policy enforcement; referral for criminal review.

## VI. PRAYER FOR RELIEF
WHEREFORE, Plaintiff requests the Court grant the following relief:

### a. Declaratory and Injunctive Relief
- A declaration that Defendant's conduct violated Title VII, the ADA, ERISA, and South Carolina law;
- An injunction requiring Defendant to implement and enforce lawful anti-harassment, anti-retaliation, and ADA compliance policies, including training for managers and HR personnel.

### b. Equitable Relief
- Reinstatement to Plaintiff's former position, or in the alternative, an award of front pay to compensate for loss of future earnings and career opportunities.

### c. Economic Damages
- Back pay for lost wages and reduced hours;
- Lost benefits, including Short-Term Disability income, life insurance, and other employment-related benefits wrongfully denied;
- Any other economic losses suffered as a result of Defendant's unlawful actions.

### d. Compensatory Damages
- Compensation for Plaintiff's emotional distress, humiliation, reputational harm, and mental anguish caused by harassment, retaliation, and denial of accommodations.

### e. Punitive Damages
- An award of punitive damages to deter Defendant and others from engaging in similar unlawful conduct.

### f. Liquidated Damages
- Where applicable, liquidated damages for willful violations of federal law.

### g. Attorneys' Fees and Costs
- An award of attorneys' fees and litigation costs as permitted by statute, or pro se costs if Plaintiff remains self-represented.

### h. Additional Relief
- Referral of the cyber impersonation incident for criminal review by appropriate authorities;
- Any other relief the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Respectfully submitted,**
Dated: 9/12/25

Tyler Mazyck
206 Whites Creek Road
Georgetown, SC 29440
(843) 359-5804
Pro Se Plaintiff

*Tyler Mazyck*